UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



ANNA BUTTERFIELD-BAJINAN,

Plaintiff,

-v-

CITY OF NEW YORK,

Defendant.

No. 16-cv-5919 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

Plaintiff Anna Butterfield-Bajinan ("Butterfield-Bajinan"), proceeding *pro se*, brings this action against Defendant the City of New York, alleging that her employer, the New York City Human Resources Administration ("NYCHRA"), discriminated and retaliated against her in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*) ("Title VII"), the New York State Human Rights Law (N.Y. Exec. L. § 290 *et seq.*) ("NYSHRL"), and the New York City Human Rights Law (N.Y.C. Admin. Code § 8-101 *et seq.*) ("NYCHRL"). Now before the Court is Defendant's motion to dismiss the Amended Complaint. For the following reasons, Defendant's motion is granted.

I. BACKGROUND

A. Facts[1]

Plaintiff Anna Butterfield-Bajinan has worked at NYCHRA for the past thirty years. She was hired in 1987 as a Fraud Investigator Level One, promoted to Fraud Investigator Level Two

---

[1] The following facts are taken from the Amended Complaint, filed on December 9, 2016. (Doc. No. 21 ("Amended Complaint" or "Am. Compl.").) In deciding Defendant's motion, the Court has also considered Defendant's memorandum of law (Doc. No. 25 ("Mem.")), Plaintiff's opposition (Doc. No. 26 ("Opp'n")), and Defendant's reply (Doc. No. 27 ("Reply")). In addition, the Court has reviewed Plaintiff's unauthorized "sur-reply" (Doc. No. 29).

in 1991, and promoted again to Associate Fraud Investigator in 1995. (Am. Compl. ¶¶ 4–6.) In August of 1999, after "[n]oticing that Caucasian colleagues were being promoted while [Butterfield-Bajinan, who is African-American,] was not," Butterfield-Bajinan successfully interviewed for a position as an Administrative Staff Analyst at the suggestion of the Assistant Commissioner. (*Id.* ¶ 8.) The Amended Complaint is silent about the next ten or so years.

Starting in 2010, however, Butterfield-Bajinan began to experience what she characterizes as racial discrimination in the terms and conditions of her employment. The Amended Complaint asserts four categories of discrimination: disparate pay, failure to promote, pretextual demotion, and retaliation. With respect to disparate pay, Butterfield-Bajinan alleges that she twice became aware, once in 2010 and again in 2012, that a Caucasian colleague of equal or lesser rank was paid more than she was. In connection with the 2010 instance, the Amended Complaint simply states that Butterfield-Bajinan "believe[s] that the difference in [their] salaries was due to the fact that [her colleague] is White and [she] is African-American." (*Id.* ¶ 9.) In 2012, however, Butterfield-Bajinan alleges that she "complained to [her] boss, who told [her] that [her colleague] was more highly paid because she was White and [Butterfield-Bajinan] was not." (*Id.* ¶ 10.) Butterfield-Bajinan thereafter filed charges with the federal Equal Employment Opportunity Commission ("EEOC") and its New York City counterpart. (*Id.* ¶ 10.) The Amended Complaint does not discuss these administrative charges further. Butterfield-Bajinan received a raise at some point after the 2012 incident, but she alleges that the same colleague continues to earn more than she does, even though she has the same title. (*Id.* ¶ 11.)

In connection with the second category of discrimination, failure to promote, the Amended Complaint recounts three incidents. First, in 2010, a less-senior Caucasian colleague was promoted to an open position that was never advertised. (*Id.* ¶¶ 14–15.) Butterfield-Bajinan

2

"believe[s]" that the failure to promote her to that position "was due to the fact that [she is] African-American and [her colleague] is Caucasian." (*Id.* ¶ 16.) Similarly, in 2012, an equally ranked Caucasian colleague was promoted to a newly created managerial position that was also not advertised. (*Id.* ¶ 12.) Once again, Butterfield-Bajinan "believe[s]" that her colleague "received the promotion," and she did not, "because he is White and [she is] African-American." (*Id.*) Finally, in 2014, yet another open position was filled by a Caucasian woman with a law degree. (*Id.* ¶ 18.) Although this position was advertised, it was advertised as requiring a law degree, which Butterfield-Bajinan does not have and which the position's previous occupant also did not have. (*Id.* ¶¶ 17, 19.) Butterfield-Bajinan "believe[s]" that this position "was turned into a position requiring a law degree so that it would . . . allow [the Caucasian woman] to advance her career," and that "she got this preferential treatment because of her race (White)." (*Id.* ¶ 19.) The Amended Complaint does not state the basis for any of Butterfield-Bajinan's beliefs.

In connection with the third category of discrimination, pretextual demotion, the Amended Complaint alleges that in 2014, after two equally ranked colleagues, one Caucasian and one African-American, both failed their required civil service exams, the African-American colleague was demoted while the Caucasian colleague was merely transferred. (*Id.* ¶¶ 21–22.) Butterfield-Bajinan "believe[s]" that the "differential treatment" of these two colleagues "reflects a practice . . . of holding African-American employees to higher standards than comparable White [employees], to prevent qualified African-American employees from advancing." (*Id.* ¶ 23.) Then in August of 2016, Butterfield-Bajinan herself failed a required civil service exam and was demoted. (*Id.* ¶¶ 24, 26–27.) While browsing the list of employees who had passed the test, Butterfield-Bajinan noticed that a Caucasian colleague who she "believe[s] was required to take the same test" did not appear on the pass list. (*Id.* ¶ 28.) That colleague, however, was not

demoted. (*Id.* ¶ 29.) Butterfield-Bajinan "believe[s]" that he was not demoted, and she was, "because he is Caucasian and [she is] African-American." (*Id.* ¶ 31.)

Finally, the Amended Complaint asserts a fourth category of discrimination, which it terms "retaliation." Although the allegations under this heading are somewhat vague and disconnected, the Amended Complaint seems to assert that (1) various positions at NYCHRA were not advertised, (2) various Caucasian employees were insulated against demotion, and (3) Butterfield-Bajinan herself was demoted, all in retaliation for Butterfield-Bajinan's having filed administrative charges in 2012. (*Id.* ¶¶ 32–35.) In other words, Butterfield-Bajinan appears to assert that many or most of the discriminatory incidents alleged elsewhere in the Amended Complaint were also instances of retaliation. In a familiar refrain, she "believe[s]" that NYCHRA's actions were "retaliatory" and "an attempt to hurt [the] chances of advancement and pay . . . of African American employees," but she does not elaborate on the basis for her belief. (*Id.* ¶ 35.)

In sum, the Amended Complaint alleges six discrete instances of discrimination in three distinct categories, together with one apparently overarching charge of retaliation. It repeatedly states Butterfield-Bajinan's "belief" that she was paid less, not alerted to job openings, and demoted because of her race, but it offers little in the way of factual support.

### B. Procedural History

On July 25, 2016, Butterfield-Bajinan, a resident of New York who is proceeding *pro se*, filed the Complaint in this action, asserting violations of Title VII, the NYSHRL, and the NYCHRL.[2] (Doc. No. 2.) The parties appeared for a conference on November 10, 2016 to discuss the City's contemplated motion to dismiss, at which the Court gave Butterfield-Bajinan leave to

---

[2] The Complaint also asserted violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12112–12117, and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634, but Butterfield-Bajinan dropped those claims from the Amended Complaint.

4

amend her Complaint to include more factual detail. (*See* Nov. 10, 2016 Transcript at 4:1–14.) On December 9, 2016, Butterfield-Bajinan filed her Amended Complaint (Doc. No. 21), and on January 23, 2017, the City filed its motion to dismiss (Doc. Nos. 24–25). The motion was fully briefed on March 13, 2017. (Doc. No. 27.)

## II. LEGAL STANDARD

To withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "provide the grounds upon which [the] claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."). To meet this standard, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns*, 493 F.3d at 98. That tenet, however, "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If the plaintiff "ha[s] not nudged [her] claims across the line from conceivable to plausible, [her] complaint must be dismissed." *Id.* at 570.

Where a plaintiff proceeds *pro se*, a court must liberally construe the complaint and interpret it to raise the strongest arguments that it suggests. *Abbas v. Dixon*, 480 F.3d 636, 639

(2d Cir. 2007). "The policy of liberally construing *pro se* submissions" arises out of the understanding that "[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Id.* "[D]ismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997)).

III. Discussion

A. Title VII Claims

As summarized earlier, the Amended Complaint, construed liberally, makes several claims under Title VII: (1) a 2010 pay disparity claim, (2) a 2012 pay disparity claim that is ongoing, (3) a 2010 failure-to-promote claim, (4) a 2012 failure-to-promote claim, (5) a 2014 failure-to-promote claim, (6) a 2016 pretextual demotion claim, and (7) an overarching retaliation claim. Before considering these claims, the Court will address the applicable statute of limitations.

1. Statute of Limitations

In order to assert a Title VII claim in federal court, a plaintiff must first "file a charge of discrimination [or retaliation] with the EEOC within 180 days of the alleged unlawful employment action or, if the claimant has already filed the charge with a state or local equal employment agency, within 300 days of the alleged discriminatory action." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996) (citing 42 U.S.C. § 2000e-5(e)). This statutory filing period is "analogous to a statute of limitations," *id.*, with the result that "discriminatory incidents not timely charged before the EEOC will be time-barred upon the plaintiff's suit in district court," *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998), *abrogated in part on other*

*grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); *see also McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 214 (2d Cir. 2006). The filing period begins to run for each discrete discriminatory or retaliatory act when that act occurs. *Hill v. Citibank Corp.*, 312 F. Supp. 2d 464, 473 (S.D.N.Y. 2004) (citing *Morgan*, 536 U.S. at 113–14).

Here, Butterfield-Bajinan filed a charge with the EEOC on May 5, 2016 (Am. Compl. at 3), and there is no indication that she first filed the charge with a state or local equal employment agency, so her Title VII claims based on incidents that occurred before November 7, 2015 – 180 days before she filed the charge – are time-barred.[3] The Court accordingly dismisses the following claims: (1) the 2010 pay disparity claim, (2) the 2012 pay disparity claim, to the extent it pertains to a pay gap that existed at any time before November 7, 2015, (3) the 2010 failure-to-promote claim, (4) the 2012 failure-to-promote claim, and (5) the 2014 failure-to-promote claim. That leaves only (i) the 2016 pretextual demotion claim, (ii) the pay disparity claim, to the extent it pertains to a pay gap that existed at any time after November 7, 2015, and (iii) the overarching retaliation claim. The Court will take up the first two employment discrimination claims together before turning to the retaliation claim.

2. Racial Discrimination

Title VII prohibits employers from "discharg[ing] any individual[] or otherwise . . . discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). To survive a motion to dismiss, a complaint alleging employment discrimination under Title VII must plead facts that plausibly support the following

---

[3] Defendant assumes that the 300-day limitations period applies here, but does not point to any evidence that Butterfield-Bajinan first filed the requisite charge with a state or local employment agency. (*See* Mem. at 4 (arguing that claims that accrued before July 10, 2015 are time-barred).) Regardless, even if the 300-day limitations period applied here, the same set of claims would be barred.

7

elements: (1) the plaintiff is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) there is "at least minimal support for the proposition that [her] employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). With respect to the fourth element in particular, "[t]he facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation." *Id.* Nevertheless, "[a] claim for discrimination under Title VII is properly dismissed where the plaintiff fails 'to plead any facts that would create an inference that any adverse action taken by any defendant was based upon [a protected characteristic of the plaintiff].'" *Williams v. Time Warner Inc.*, 09-cv-2962 (RJS), 2010 WL 846970, at *3 (S.D.N.Y. Mar. 3, 2010) (quoting *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) (per curiam)); *see also EEOC v. Port Auth. of New York & New Jersey*, 768 F.3d 247, 254 (2d Cir. 2014) ("[W]hile a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss, it must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed.") (internal citations omitted).

The Amended Complaint pleads facts that are sufficient to support the first and third elements of a Title VII discrimination claim when it alleges (a) that Butterfield-Bajinan is African-American and (b) that she was both demoted in August of 2016 and also paid less than a similarly situated Caucasian colleague between November 7, 2015 and the present. (*See* Am. Compl. at 3, ¶¶ 26, 11); *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) ("Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [and] significantly diminished material

8

responsibilities[.]") (citations omitted); *Butler v. New York Health & Racquet Club*, 768 F. Supp. 2d 516, 532 (S.D.N.Y. 2011) ("Subjecting an employee to unequal pay can, of course, constitute a materially adverse employment action."). By emphasizing Butterfield-Bajinan's thirty years of experience, the Amended Complaint also implicitly alleges that she was qualified both for her current position and for the position she held before her demotion, although the concession that she failed her required civil service exam undermines the allegation that she was qualified for her former position. Still, even assuming that the qualification element is adequately pleaded here, the Amended Complaint's allegations altogether fail to "give plausible support to a minimal inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311.

"An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)). With respect to the August 2016 demotion, the Amended Complaint pleads no facts that even arguably give rise to an inference that Butterfield-Bajinan was demoted because she is African-American. Heaping speculation upon speculation, it jumps abruptly from the observation that Butterfield-Bajinan was demoted after failing her exam, together with the observation that a Caucasian colleague whose name was not on the pass list (and who Butterfield-Bajinan "believe[s]" – that is, speculates – was also required to take the exam) kept his position, to the conclusion that she was demoted, and he was not, for racially discriminatory reasons. (Am. Compl. ¶¶ 27–31.) It makes no allegations about racially degrading criticism or invidious comments, and pleads no facts to suggest that the exam was administered unfairly. Although it

9

perhaps attempts to encourage an inference of unequal treatment by alluding to the 2014 occasion when an African-American employee was demoted after failing an exam while a Caucasian employee with the same job title was instead transferred, the attempt is unsuccessful because the Amended Complaint does not allege facts to show that the two employees were similarly situated in relevant respects – that they had comparable qualifications, took their exams at the same time, or even took comparable exams. Instead, the allegations about the 2014 incident also rest on bald and speculative assertions about Butterfield-Bajinan's "belie[f]" that the personnel decisions were motivated by racial discrimination. (*Id.* ¶ 23.) Without a factual basis for her beliefs, though, Butterfield-Bajinan's allegations are mere legal conclusions, which the Court is not required to accept. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

The disparate-pay claim fares no better. The closest the Amended Complaint comes to alleging facts, rather than legal conclusions, about a discriminatorily motivated incident related to Butterfield-Bajinan's pay is when it asserts that an unidentified supervisor told Butterfield-Bajinan in 2012 that a Caucasian colleague was more highly compensated "because [the colleague] was White and [Butterfield-Bajinan] was not." (Am. Comp. ¶ 11.) But as discussed earlier, the disparate-pay claim is time-barred to the extent that it relates to occurrences before November 7, 2015, so the Court can consider the 2012 incident only to the extent that it sheds light on compensation decisions made during the limitations period. *See Coffey v. Cushman & Wakefield, Inc.*, No. 01-cv-9447 (JGK), 2002 WL 1610913, at *2 (S.D.N.Y. July 22, 2002) ("[T]he statute of limitations . . . bars relief for [discrete] acts even if they are related to other actionable conduct that is not time-barred and might otherwise be considered part of a continuing violation."). And the Amended Complaint makes no attempt to show that the 2012 statement had any basis in fact or that the anonymous "boss" who made the remark had any power to set employee compensation

10

during (or, for that matter, before) the limitations period. *See, e.g., Tomassi v. Insignia Fin. Grp.*, 478 F.3d 111, 115 (2d Cir. 2007) ("[R]emarks made by someone other than the person who made the decision adversely affecting the plaintiff may have little tendency to show that the decision-maker was motivated by the discriminatory sentiment expressed in the remark."), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009); *Khan v. Abercrombie & Fitch, Inc.*, No. 01-cv-6163 (WHP), 2003 WL 22149527, at *7 (S.D.N.Y. Sept. 17, 2003) (alleged discriminatory statements by coworker who "played no role in [employer's] decision to terminate [plaintiff] . . . do not raise an inference of discrimination"). Altogether, this portion of the Amended Complaint merely intones, once again, Butterfield-Bajinan's subjective "belie[f]" that the pay gap between her and her colleague must be attributable to racial discrimination, but it pleads no facts to support that belief.

"It is axiomatic that mistreatment at work . . . is actionable under Title VII only when it occurs *because of* an employee's . . . protected characteristic." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (emphasis added). Although at this stage Butterfield-Bajinan need only plead facts that support a "minimal inference" of a causal link between racially discriminatory motivation and demotion or disparate pay, her Amended Complaint fails to satisfy even that modest requirement. Because Butterfield-Bajinan alleges no facts that allow the Court to infer that she suffered adverse employment actions because she is African-American, her claims for discrimination under Title VII must be dismissed.

### 3. Retaliation

Butterfield-Bajinan also claims that NYCHRA transgressed Title VII's anti-retaliation provision, which prohibits an employer from retaliating against an employee "because [s]he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. §

2000e–3. "To state a claim for retaliation in violation of Title VII, a plaintiff must plead facts that would tend to show that: (1) she participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging her; and (3) there exists a causal connection between the protected activity and the adverse action." *Patane*, 508 F.3d at 115; *see also Littlejohn*, 795 F.3d at 316. As with a discrimination claim, "[t]he allegations in the complaint need only give plausible support to the reduced *prima facie* requirements that arise . . . in the initial phase of [employment discrimination] litigation." *Id.* Moreover, in the absence of a direct link between protected activity and retaliatory action, a plaintiff may demonstrate the necessary causal connection "indirectly, by showing that the protected activity was followed closely by discriminatory treatment [in the form of an adverse employment action]." *Id.* at 319 (citation omitted).

As noted earlier, the Amended Complaint in this case does not clearly distinguish between Butterfield-Bajinan's discrimination and retaliation claims. Construed liberally, however, it alleges that Butterfield-Bajinan was demoted in 2016 in retaliation for having filed an EEOC charge in 2012 in connection with the alleged pay disparity incident. The Amended Complaint arguably pleads facts sufficient to show the first two of the required elements: the filing of formal charges and subsequent demotion. Butterfield-Bajinan's retaliation claim nonetheless falls short because the Amended Complaint fails to plead any facts that even remotely imply a causal connection between the filing of the EEOC charge in 2012 and the demotion in 2016. First, Butterfield-Bajinan does not allege that the supervisor who demoted her in 2016 knew about the charges she filed in 2012. *See, e.g., Payne v. Malemathew*, No. 09-cv-1634 (CS), 2011 WL 3043920, at *4 (S.D.N.Y. July 22, 2011) (dismissing retaliation claim where, among other things, plaintiff alleged no facts indicating that employer knew of employee's engagement in protected activity). And although "[a] plaintiff may assert causal connection [either] through allegations of

12

retaliatory animus, or else by circumstantial evidence, such as close temporal proximity between the protected activity and the retaliatory action," *Perry v. State of New York Dep't of Labor*, No. 08-cv-4610 (PKC), 2009 WL 2575713, at *6 (S.D.N.Y. Aug. 20, 2009), *aff'd*, 398 F. App'x 628 (2d Cir. 2010), the Amended Complaint does neither here. The four-year interlude between formal charge and demotion is far "too long for a causal inference to be appropriate." *Cunningham v. Consol. Edison Inc.*, No. 03-cv-3522 (CPS), 2006 WL 842914, at *20 (E.D.N.Y. Mar. 28, 2006); *see, e.g., Murray v. Visiting Nurse Servs. of New York*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) ("[D]istrict courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation.") (collecting cases). And allegations of retaliatory animus are altogether lacking: the Amended Complaint simply asserts, in entirely conclusory fashion, that Butterfield-Bajinan "believe[s] the result[] of [NYCHRA's] action is retaliatory." (Am. Compl. ¶ 35.) But the Amended Complaint itself suggests a far more plausible reason than retaliation for Butterfield-Bajinan's demotion – namely, her failure to pass a required civil service examination. In sum, because the Amended Complaint alleges no facts that allow the Court to infer that Butterfield-Bajinan was demoted in retaliation for having engaged in protected activity in 2012, her claim for retaliation under Title VII must also be dismissed.[4]

---

[4] The Amended Complaint mentions only the 2012 EEOC charge and does not seem to allege that Butterfield-Bajinan was demoted in retaliation for filing her more recent EEOC charge on May 5, 2016. (*See* Am. Compl. ¶¶ 32–35.) Even if it could be construed to make such an allegation, however, that retaliation claim would likewise be dismissed for failure to plead any facts that might suggest a causal connection between the filing of the charge and the August 15, 2016 demotion. (*See id.* ¶ 26); *see, e.g., Campbell v. Home Depot U.S.A., Inc.*, No. 03-cv-421 (KMK), 2006 WL 839001, at *13 (S.D.N.Y. Mar. 30, 2006) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close.") (quoting *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam) (internal quotation marks and citation omitted)), *aff'd*, 221 F. App'x 21 (2d Cir. 2007); *Ruhling v. Tribune Co.*, No. 04-cv-2430 (ARL), 2007 WL 28283, at *23 (E.D.N.Y. Jan. 3, 2007) (finding that "a passage of two months between the protected activity and the adverse employment action seems to be the dividing line").

## B. State and City Law Claims

Having dismissed Butterfield-Bajinan's federal claims, the Court next considers whether to exercise supplemental jurisdiction over her NYSHRL and NYCHRL claims. *See* 28 U.S.C. § 1367(c)(3) ("[A] district court[] may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."). As the Second Circuit has instructed, in most cases where all federal claims have been dismissed before trial, "the balance of factors to be considered under the [supplemental] jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal law claims are dismissed before trial . . . the state claims should be dismissed as well."). For this reason, courts in this circuit "regularly decline jurisdiction over NYSHRL and NYCHRL claims once the federal employment claims have been dismissed." *Morant v. Physicians Affiliate Grp. of New York, P.C.*, No. 14-cv-0067, 2014 WL 3964153, at *2 (S.D.N.Y. Aug. 13, 2014) (quoting *Harris v. NYU Langone Medical Ctr.*, No. 12-cv-0454 (RA), 2014 WL 941821, at *2 (S.D.N.Y. March 11, 2014)). Therefore, the Court declines to exercise supplemental jurisdiction and dismisses Butterfield-Bajinan's NYSHRL and NYCHRL claims without prejudice, *see Siegel v. Apergis*, 610 F. App'x 15, 16 (2d Cir. 2015) ("[W]hen a court dismisses for lack of subject-matter jurisdiction, that dismissal must be without prejudice."), though the Court is skeptical that the Amended Complaint pleads facts sufficient to support claims even under the more generous NYCHRL standard, *see, e.g.*, *Williams v. Metro-N. Commuter R. Co.*, No. 11-cv-7835 (CM), 2012 WL 2367049, at *13 (S.D.N.Y. June 20, 2012) ("The broader remediation available under the City

law does not allow [a plaintiff] to dispense with linking [her] claim of hostility to some attitude that the law forbids.").

IV. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT Defendant's motion to dismiss is GRANTED. Plaintiff's Title VII claims are dismissed with prejudice, and her NYSHRL and NYCHRL claims are dismissed without prejudice. The Clerk of Court is respectfully directed to terminate the motion pending at docket number 24, enter judgment in favor of Defendant, mail a copy of this Order to Plaintiff, and close this case.

SO ORDERED.

Dated:   September 11, 2017
         New York, New York

_____
RICHARD J. SULLIVAN
United States District Judge